AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

*March 31, 2023*

Nathan Ochsner, Clerk of Court

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT pressurehit.ao THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC.. | ) ) ) ) |

Case No. **4:23-mj-640**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachement A

located in the _____Northern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 1591 | Sex Trafficking of a Minor |
| 18 USC 2251 | Sexual Exploitation of Children |

The application is based on these facts:

See the Affidavit in Support of Search Warrant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mitchell Lundquist, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: _____03/31/2023_____

_____
*Judge's signature*

City and state: Houston, Texas

Andrew M. Edison, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT **pressurehit.ao** THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. **4:23-mj-640** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Mitchell Lundquist, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta Platforms"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platforms to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     Your Affiant is a Special Agent (SA) with the Department of Homeland Security (DHS) with Homeland Security Investigations (HSI), Immigration and Customs Enforcement (ICE). I am currently assigned to the HSI office in Houston, Texas. I am

empowered by the DHS as a SA to execute arrests, searches, and seizures for violations of

Titles 8, 18, 19, and 31 of the United States Code and related offenses. I have been a SA for

HSI since March of 2019. I was previously employed, from May 2016 to March 2019, with

U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations

(ERO), as a Deportation Officer and was assigned to New Orleans, LA. My primary duties

included enforcement functions relating to the investigation, identification, arrest, prosecution,

detention and deportation of aliens, and the apprehension of absconders from removal

proceedings. Prior to being employed as a Deportation Officer, I was also employed from

April of 2015 to May of 2016 with U.S. Customs and Border Protection (CBP), United States

Border Patrol (USBP), as a Border Patrol Agent, and was assigned to Eagle Pass, TX. My

primary duties were to patrol and interdict alien smuggling loads that were being transported

via highway, land, and train. I have received training in numerous types of investigations

involving alien smuggling conspiracies, drug smuggling conspiracies, and money laundering

conspiracies.

3.      Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that the Instagram account **pressurehit.ao** contains evidence

of violations of 18 U.S.C. §1591 (Sex Trafficking of a Minor) and 18 U.S.C. § 2251 (Sexual

Exploitation of Children). There is also probable cause to search the information described in

Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further

described in Attachment B.

## **JURISDICTION**

4.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is in the district in which the provider is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii).

## PROBABLE CAUSE

5. In January of 2023, HSI Houston participated in an HSI Dallas North Texas Trafficking Task Force (NTTTF) rescue of a previously identified Minor Victim of Sex Trafficking in the Houston, TX area. Based on that rescue of Minor Victim 1 (MV1), DOB 05/28/2006, HSI Houston initiated an investigation into Antonio Dario OSORIO-Avelar, a suspected pimp who is allegedly involved in the trafficking and prostitution of females, including juveniles, in the Dallas and Houston, Texas areas.

6. On January 26, 2023, HSI SAs observed MV1, and a female later identified as Alejandra BANEGAS-Calderon, walking across the parking lot of a Burger King restaurant located at 12590 Bissonnet Street, Houston, Texas, 77099. This address is within the area where women were advertising themselves for commercial sex and customers were observed seeking services. Both MV1 and BANEGAS were dressed in high heeled shoes, lingerie, and panty hose. MV1 was then transported to the Texas Children's Hospital in Houston, TX and later interviewed.

7. During an interview with MV1, MV1 stated OSORIO instructed MV1 to turn on location services on her cellular telephone so he could track her location. OSORIO gave her a "quota" of $500.00 per night. I am aware the term "quota" generally refers to a set amount of money that a trafficking victim must make each night before she can come "home." Quotas are often set between $300 and $2000 in the commercial sex trade. MV1 told HSI SAs that much of this communication was conducted through Instagram. Additionally, based on other information provided by MV1, HSI SAs and Houston Police Department (HPD) Detectives were able to partially identify Minor Victim 2 (MV2), DOB 02/24/2006.

3

8.      On February 10, 2023, HSI SA Pawson and HPD Detective Sellers confirmed MV2's identity and further confirmed she had been a victim of sex trafficking by OSORIO during a forensic interview which was conducted at the Child Advocacy Center located at 2500 Bolsever Road in Houston, TX. Additionally, HSI SAs took custody of a cellphone belonging to MV2 for further examination based on her written consent.

9.      On February 27, 2023, HSI SAs examined the cellphone extraction completed from MV2's phone and discovered the following information. In a conversation with Antonio OSORIO-Avelar aka PRESSURE, starting on January 18, 2023, MV2 sends OSORIO, "aye, I took sum for that site." MV2 then proceeds to send multiple nude images of herself and images with her and BANEGAS partially clothed in sexual suggestive positions. Based on the conversation it appears MV2 completed at least eight dates for OSORIO from January 18, 2023, through January 21, 2023. For example, MV2 messages OSORIO, "1 Ashbury," to which OSORIO responds, "what?" MV2 then reiterates, "Ashbury Hotel," to which OSORIO responds, "nahhh…tell him pearl inn." (Agents Note: The Pearl Inn is a hotel located at 11959 S Sam Houston Parkway W Houston, TX. This hotel is known by law enforcement as a known place for commercial sex activity.) Later in the conversation MV2 tells OSORIO, "Aye it's a lot of p's," (Agents Note: "P's" referring to pimps.) to which OSORIO responds, "ik put yo head down, catch dis last date."

10.     Furthermore, On January 20, 2023, MV2 messages OSORIO, "Hey, there's this hoe in Arlington. The one from Iran? She said she wants in as soon as possible," followed by multiple photos of a female who has been identified as Minor Victim 4 (MV4) and her phone number. OSORIO then responds by telling MV2 to have MV4 message him on Instagram and that his username is pressurehit.ao. (Agents Note: Pressure is the aka of Antonio OSORIO-

4

Avelar, during an encounter with HSI SAs on February 2, 2023, HSI SAs discovered OSORIO has "PRESSURE" tattooed across his chest along with his initial's "A" and "O".)

11.     A public records search of Instagram account user **pressurehit.ao** displays multiple shared photos of Antonio OSORIO-Avelar. Your affiant who viewed the Instagram account has also viewed the Texas Drivers license of Antonio OSORIO-Avelar and believes them to be the same person.

12.     Based on the above-mentioned facts, your Affiant has reason to believe that there is probable cause that Instagram user **pressurehit.ao** has previously utilized this Instagram account to further his efforts of sex trafficking of minors activities to include, recruiting and coordinating sex trafficking events. Your Affiant has reason to believe that information and/or further evidence of sex trafficking of a minor activities, including messages, photos, videos, location, and other electronic data stored on the account that would indicate the involvement in sex trafficking of a minor of persons known and unknown, the possible identification of other minor victims, and the transfer of the illicit proceeds from one bank account to another, contrary to federal law are stored by Instagram for username **pressurehit.ao** as described in Attachment "B".

## BACKGROUND CONCERNING INSTAGRAM[1]

13.     Instagram is a service owned by Meta Platforms, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.

---

[1] The information in this section is based on information published by Facebook on its website and its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public. Meta Platforms collects basic contact and personal identifying information from usersduring the Instagram registration process. This information, which can later be changed by theuser, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank accountnumber, and other personal identifiers. Meta Platforms keeps records of changes made to this information.

14.     Meta Platforms also collects and retains information about how each user accesses anduses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

15.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

16.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta

6

Platforms maintains records of changed Instagram usernames, associated Instagram accounts, and previousand current connections with accounts on Facebook and third-party websites and mobile apps.

17.     Instagram users can "follow" other users to receive updates about their posts andto gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

18.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta Platforms to access the contact lists on their devices to identify which contacts are Instagram users. Meta Platforms retains this contact data unless deleted by the userand periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta Platforms to search an associated Facebook account for friends who are also Instagram users.  Users can also manually search for friends or associates.

19.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

20.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on

7

their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them.  Archived posts can be reposted because, unlike deleted posts, they remain on Facebook's servers.

21.    Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

22.    An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta Platforms' servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

23.    Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

24.    Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or

8

twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

25.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and retains payment information, billing records, and transactional and other information when theseservices are utilized.

26.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Facebook retains records of a user's search history and followed hashtags.

27.     Meta Platforms collects and retains location information relating to the use of anInstagram account, including user-entered location tags and location information used by Facebook to personalize and target advertisements.

28.     Meta Platforms uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta Platforms maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and itcan also reveal potential sources of additional evidence.

29.     In some cases, Instagram users may communicate directly with Meta Platforms about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta Platforms typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. For each Instagram user, Meta Platforms collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

30.     As aforementioned above, this investigation is related to sex trafficking of minors and based on my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

31.     As aforementioned above, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, the stories, direct messages, group messages, and other electronic data on the account are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

32.     As mentioned above, this Instagram username **pressurehit.ao**, is recruiting minors and other females and coordinating events to further his sex trafficking events, on

10

Instagram, and finalizing those transactions through messages, which would implicate other individuals into the conspiracy to commit sex trafficking of a minor. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta Platforms can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, [[email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo- location, date and time)]] may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to accessthe account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

33.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

34.     As mentioned above, other information connected to the use of Instagram may lead to the discovery of additional evidence.  For example, the messages and stories may reveal other social media or peer to peer lending apps used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, stories, direct messages, and other electronic data can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

11

35.     Therefore, Meta Platforms' servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

36.     Based on the forgoing, I request that the Court issue the proposed search warrant.

37.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Meta Platforms.  Because the warrant will be served on Meta Platforms, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Mitchell Lundquist
Special Agent
Homeland Security Investigations

Subscribed and sworn telephonically on March 31, 2023, and I find probable cause.

Andrew M. Edison
United States Magistrate Judge

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with Instagram account **pressurehit.ao**,

between December 8, 2022, and present, that is stored at premises owned, maintained,

controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 WillowRoad,

Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms, Inc. ("Facebook")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Meta Platforms, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) between **December 8, 2022 and present**, Meta Platforms is required todisclose the following information to the government for each account or identifier listed in Attachment A:

A.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.      Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.      All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.      Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.      Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.      All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.      Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, **December 8, 2022, to present;**

7. Privacy and account settings, including change history; and

8. Communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken;

B. All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, **from December 8, 2022, to present.**

C. All content, records, and other information relating to communications sent from or received by the Account **December 8, 2022, to present** including but not limited to:

1. The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2. All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3. All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4. All associated logs and metadata;

D. All content, records, and other information relating to all other interactions between the Account and other Instagram users **December 8, 2022, to present,** including but not limited to:

1. Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3. All contacts and related sync information; and

4. All associated logs and metadata;

2

E.      All records of searches performed by the account **December 8, 2022, to present**; and

F.      All location information, including location history, login activity, information geotags, and related metadata **from December 8, 2022, to present**.

Meta Platforms is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

3

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 1591 (Sex Trafficking of a Minor), 18 U.S.C. § 2251 (Sexual Exploitation of Children) including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence indicating sex trafficking of a minor and sexual exploitation of children, such as messages, stories, and other electronic data.

(b) Evidence indicating proceeds of sexual exploitation of children and sex trafficking of a minor, such as any display of bank information, any communication of involving money and/or transfer of money, any reference to other applications such as peer to peer lending apps (Zelle, paypal, venmo, Cashapp, and etc.)

(c) Evidence of utilizing other social media applications beside Instagram to facilitate the above crimes.

(d) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(e) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(g) The identity of the person(s) who communicated with the user ID **regarding sex trafficking of a minor**, including records that help reveal their whereabouts.

### III.    Method of Delivery

Items seized pursuant to this search warrant can be served by sending (notwithstanding Title 18, United States Code, Section 2251, 2252A, or similar statute or code) to the listed Special Agent. Meta Platforms, Inc. shall disclose responsive data, if any, by delivering on any digital media device via the United States Postal Service or commercial interstate carrier (FedEx, UPS, DHL) c/o Special Agent Mitchell Lundquist, HSI, 25700 Interstate 45 North, Spring, Texas 77386; or via their established online law enforcement portal; or via links to encrypted files for HSI SA Mitchell Lundquist at mitchell.j.lundquist@ice.dhs.gov.